MILTON COMMONS ASSOCIATES[1] *vs.* BOARD OF APPEALS
OF MILTON.

Norfolk.  May 12, 1982. — June 30, 1982.

Present: DREBEN, ROSE, & KASS, JJ.

*Zoning,* Low and moderate income housing, Constructive grant of com-
prehensive permit. *Statute,* Construction. *Words,* "Hearing."

Public hearings on an application for a comprehensive permit for the con-
struction of low and moderate income housing under G. L. c. 40B,
§§ 20-23, ended with a session during which the chairman of a local
zoning board of appeals announced that the hearings were concluded
except for a deliberative meeting, which was to be open to the public
but at which the public would not be allowed to participate, and the
board's failure to act on the application within forty days following
the end of the hearings was deemed to be a constructive grant of the
comprehensive permit. [112-115]
An appeal under G. L. c. 40B, § 21, from a constructive grant of a com-
prehensive permit for the construction of low and moderate income
housing must be filed within twenty days after the date on which the
permit is deemed to have been issued as a result of a local zoning
board's failure to act. [115-120]

CIVIL ACTION commenced in the Superior Court Depart-
ment on February 26, 1981.

Summary judgment was ordered by *Hurd,* J.

*Robert E. McLaughlin (Michael Eby* with him) for the
plaintiff.

---

[1] Milton Commons Associates is a limited partnership and under Mass.
R.Civ.P. 17(a), 365 Mass. 763 (1974), the action should have been
brought in the name of its general partners. *Roberts-Haverhill Associates
v. City Council of Haverhill,* 2 Mass. App. Ct. 715, 721 (1974). *First
Hartford Realty Corp.* v. *Corporate Property Investors,* 12 Mass. App.
Ct. 911 (1981).  Smith & Zobel, Rules Practice § 17.8, at 2 n.30 (Supp.
1981).  This procedural irregularity has assumed no importance in the
proceedings.  Compare *DiLuzio* v. *United Elec., Radio & Mach. Work-
ers, Local 274,* 386 Mass. 314 (1982).

*Robert D. O'Leary*, Town Counsel, for the defendant.

KASS, J.  Milton Commons Associates (MCA) applied to the Board of Appeals of Milton for a comprehensive permit under G. L. c. 40B, §§ 20 through 23 (popularly known as the Anti-snob Zoning Act), to build low and moderate income housing.  Public hearings on MCA's proposal began on July 9, 1980, and continued over twelve separate sessions through December 15, 1980.  The preceding sentence assumes the answer to one of the questions raised by the parties:  When did the hearing end for purposes of calculating whether a permit was deemed to have issued by reason of the board's failure to act within the time limits prescribed by G. L. c. 40B, § 21?  A second question is: What event began the twenty-day period during which persons aggrieved by the issuance of a constructive permit (because of the board's inaction) might file a complaint seeking judicial review?

1.  *When did the hearing end?*  Upon the opening of the twelfth session of hearings on December 15, 1980, the chairman of the board made an announcement:

> "At the outset, with the hope and expectation that we are going to finish tonight, I am going to schedule a deliberative session of the Board for January 21, 1981, here at the school hall at 7:30.  This is a somewhat unusual session for the Board because under a recently decided Massachusetts decision, the Board of Appeals is obliged to conduct its deliberations in public.  So, Messrs. Connelly, Gans, and I will be discussing at that time all the evidence that has come before us, and we are obliged to come to a decision at this session, and we are obliged to have a vote recorded.  Unfortunately none of you can get in on the act, and if you want to come and listen to us argue among ourselves, you are welcome.  The law requires us to have this session and we will have it."

At the end of that evening the chairman said:  "I take it, ladies and gentlemen, that this concludes the evidential part

of our hearing subject to the letter that we are going to get from Mr. York [counsel for MCA] and remains only now for the deliberative public session." If this marked the end of the public hearing on MCA's application, it marked the beginning of a period during which the board had to issue a decision. General Laws, c. 40B, § 21, inserted by St. 1969, c. 774, § 1, provides: "The board of appeals shall render a decision, based upon a majority vote of said board, within forty days after the termination of the public hearing . . . . If . . . a decision is not rendered within the time allowed, unless the time has been extended by mutual agreement between the board and the applicant, the application shall be deemed to have been allowed and the comprehensive permit . . . shall forthwith issue." It is apparent from the record that at least the chairman and another member of the board thought that the forty-day period did not begin to run until the end of the deliberative session. It is also apparent from the record that counsel for MCA adroitly resisted an invitation from a member of the board to extend the hearing and, thus, the time for decision.

When he opened the meeting of January 21, 1981, the chairman of the board said: "We are having somewhat of an unusual session both for you [referring to the public] and for us. Under the statute, we are required to deliberate in public. So, it has come to the state where now we can no longer accept your views and opinions, but we must debate the matter among ourselves." This was a reference to *Yaro* v. *Board of Appeals of Newburyport,* 10 Mass. App. Ct. 587, 588-592 (1980), in which we said that G. L. c. 39, § 23B (the open meeting law), required a board of appeal to deliberate and decide at a meeting open to the public, although, once a decision was arrived at and announced, its reduction to writing did not need to occur in public view. *Yaro,* at 590-591, distinguished public hearings required to be held "in the first instance" from the deliberative meeting, at which there would be no participation by the public while the board reached a decision. That distinction the board overlooked in the instant case. The same distinction

was made in *Building Inspector of Attleboro* v. *Attleboro Landfill, Inc.*, 384 Mass. 109, 110-111 (1981), in which the court, considering a similar limitation period running from the date of public hearing, counted from the hearing day, not from the day two months later when the planning board met to decide.

What the elements of a hearing are will vary with the nature of the proceeding. "The term 'hearing' like 'jurisdiction' is 'a verbal coat of too many colors.'" Friendly, Some Kind of Hearing, 123 U. Pa. L. Rev. 1267, 1270 (1975), quoting Justice Frankfurter in *United States* v. *L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 39 (1952) (Frankfurter, J., dissenting). Davis defines a hearing as "any oral proceeding before a tribunal." 1 Davis, Administrative Law § 7.01, at 407 (1958). Judge Friendly observes that, as broad as that definition is, it may not be broad enough, for it fails to take into account written submissions. Friendly, *supra* at 1270. At the least, however, a hearing must afford the person entitled to it "the right to support his allegations by argument however brief, and, if need be, by proof, however informal." *Londoner* v. *Denver*, 210 U.S. 373, 386 (1908). Many of the cases which consider the elements of a hearing come up in the context of disputes over personal rights such as termination of employment or termination of welfare benefits. Those cases have emphasized trial type public hearings which include an opportunity to confront and cross-examine adverse witnesses, as well as the right to make an affirmative case through the presentation of evidence and oral argument. See *Lowry* v. *Commissioner of Agriculture*, 302 Mass. 111, 117 (1939); *Goldberg* v. *Kelly*, 397 U.S. 254, 267-268 (1970); *Endicott* v. *Huddleston*, 34 Ill. App. 3d 799, 803 (1975). Compare *Joint Anti-Fascist Refugee Comm.* v. *McGrath*, 341 U.S. 123, 171-172 (1951) (Frankfurter, J., concurring). Less is probably required in zoning proceedings, where cross-examination of adverse witnesses, while not proscribed, is not required. But at the least a public hearing in the zoning context "connotes the opportunity for interested persons to appear and express

their views pro and con." *Willey* v. *Town Council of Barrington,* 106 R.I. 544, 551 (1970).

That minimal characteristic of a public hearing was absent from the deliberative session of January 21, 1981, at which MCA and interested parties were expressly instructed to keep their lips sealed while the board pondered. Public hearings end when the right of interested parties to present information and argue is cut off. We are of opinion that the board took such a step on December 15, 1980. Requests by members of the board to MCA for specific items of information (what the intentions of MCA were as to night staffing, what floors would be equipped with sprinklers, the quantity of fill to be brought in and off the site) did not extend the hearing; it involved only uncontested facts and presented no opportunity for either party to persuade or contradict. Nor does the record make it appear that MCA agreed in all events to answer the questions put or that it did ever answer them. If asking a question during the course of a hearing in and of itself kept open a hearing which was otherwise concluded, it would be a simple matter to keep hearings open indefinitely and to frustrate the streamlined procedure which the Anti-snob Zoning Act sought to introduce. See part 2 of this opinion. As it was, stretching hearings over six months was something less than a fast track process.

2. *The time in which judicial review of a constructive permit must be sought.* MCA's complaint had asked for a declaration under G. L. c. 231A that it had secured a constructive comprehensive permit and an order that the board issue a comprehensive permit. In framing a judgment favorable to MCA, the judge added: "All judicial appeals in accordance with G. L. c. 40B, § 21, and G. L. c. 40A, § 17, shall be filed no later than twenty days after the date of filing notice of the Board's granting the comprehensive permit." From that portion of the judgment MCA has appealed, raising in still another context the question of what triggers the commencement of the limitations period for claiming judicial review of a permit or approval deemed to have been issued by the failure of a board of appeal or planning board

to act within the prescribed time. See *Selectmen of Pembroke* v. *R. & P. Realty Corp.*, 348 Mass. 120, 124-127 (1964); *Building Inspector of Attleboro* v. *Attleboro Landfill, Inc.*, 384 Mass. at 111-113; *Noe* v. *Board of Appeals of Hingham*, 13 Mass. App. Ct. 103 (1982).

Section 21 of c. 40B, as we have seen, provides that if a decision is not rendered within forty days after the end of the public hearing phase, "the application shall be deemed to have been allowed *and the comprehensive permit or approval shall forthwith issue.* Any person aggrieved by the issuance of a comprehensive permit or approval may appeal to the court as provided in section seventeen of chapter forty A." (Emphasis supplied.) It is the position of MCA that any person seeking judicial review of the comprehensive permit constructively granted on January 26, 1981 (the fortieth day having fallen on a Saturday), was bound to do so within twenty days, i.e., by February 16, 1981 (the twentieth day having fallen on a Sunday). If, MCA notes with justifiable alarm, judicial review need not be pressed until the board files notice with the town clerk that it has granted a permit, then an entirely new round of court proceedings stretches ahead since the board has not, to this day, issued a permit, let alone filed notice of it with the town clerk. Yet, as the judge no doubt observed, G. L. c. 40B, § 21, incorporated the judicial review provisions of G. L. c. 40A, § 17, and the latter provides that an action is to be brought within twenty days after the decision *has been filed in the office of the city or town clerk.*

To the solution of this conundrum we apply the tools of statutory construction devised by courts to solve statutory ambiguities (or, it is fair to say in this case, paradoxes): legislative history (*Murphy* v. *Bohn*, 377 Mass. 544, 547-548 [1979]); reading the statute so as to resolve conflicts and to give it a reasonable construction (*School Comm. of Greenfield* v. *Greenfield Educ. Assn.*, 385 Mass. 70, 79-80 [1982]; *Noe* v. *Board of Appeals of Hingham*, 13 Mass. App. Ct. at 111 [Dreben, J., dissenting]); viewing the statutory scheme as a whole (*Pereira* v. *New England LNG Co.*, 364 Mass.

109, 115 [1973]); and avoiding a construction which would negate legislative intent or defeat its intended utility (*Board of Appeals of Hanover* v. *Housing Appeals Comm.*, 363 Mass. 339, 354, 355 [1973]; *Simon* v. *Solomon*, 385 Mass. 91, 100 [1982]). In the *Hanover* case, the legislative history behind c. 40B was reviewed: the broad purpose was to promote construction of housing for persons of low and moderate income (363 Mass. at 351, 352); a means to that end was to streamline local permit procedures (cf. 363 Mass. at 347). See also *Mahoney* v. *Board of Appeals of Winchester*, 366 Mass. 228, 232-233 (1974), appeal dismissed, 420 U.S. 903 (1975). As part of the streamlining the Legislature inserted a timetable for administrative action. To give teeth to the timetable, the Legislature provided that a local board's failure to adhere to it would result in approval. This applies not only to a failure to make a timely decision, but also to a failure to convene a timely hearing. G. L. c. 40B, § 21.[2]

Unlike analogous statutory provisions which apply to more conventional zoning proceedings (i.e., applications for special permits or variances under G. L. c. 40A), the text of G. L. c. 40B, § 21, does not require the filing of a decision with the town clerk, nor is the time for the next step under c. 40B, § 22, the appeal to the Housing Appeals Committee, timed by a filing by the local board with its town or city clerk. Rather the "appeal shall be taken within twenty days after the date of the notice of the decision by the board of appeals." G. L. c. 40B, § 22, inserted by St. 1969, c. 774, § 1. In this respect G. L. c. 40B, §§ 21 and 22, differ from G. L. c. 40A, §§ 15 and 17, as appearing in St. 1975, c. 808,

---

[2] Delay is often as effective as denial. In c. 40B proceedings it could, but for the provision attaching consequence to delay, be more effective than denial. An applicant whose proposal is denied can appeal to the Housing Appeals Committee, which has the power to override the local board. G. L. c. 40B, §§ 22 & 23. If a local board could sit indefinitely on an application or until compelled by a court to act on it, this avenue of relief to the Committee could be blocked for sufficiently long to fend off many developers because of the expiration of options to buy the land in question or because of the weight of carrying costs for land which the developer owned.

§ 3, which this court had occasion to consider in *Noe* v. *Board of Appeals of Hingham,* 13 Mass. App. Ct. at 106-109. Under § 15 decisions are to be filed within fourteen days in the office of the city or town clerk and appeals for judicial review, if any, are to be made within twenty days after the date of that filing. Section 17 of c. 40A, which deals with judicial review, repeats the provision of § 15 requiring appeals to be initiated within twenty days after the decision has been filed. Although G. L. c. 40B, § 21, authorizes persons aggrieved by the issuance of a comprehensive permit to appeal as provided in G. L. c. 40A, § 17, we are of opinion that this reference does not incorporate adoption of the filing requirement of G. L. c. 40A, § 15, which is conspicuously absent in G. L. c. 40B, § 21.

This is not the only respect in which § 17 must be given practical application in the case of a constructive grant of a permit. Unless the local board chooses to cooperate, it will not be possible to attach to the complaint a copy of the board's decision since, by hypothesis, none has been issued. The purpose of attaching the decision, a requirement which antedated the notion of a grant of a permit under c. 40A through inaction,[3] was to inform the court of the reasons given by the board for its action. There are no substantive reasons to give when a board has failed to convene a hearing or has failed to act. Section 21 of c. 40B also refers to G. L. c. 40A, § 11, to guide the conduct of hearings under c. 40B. We do not think that reference extends to the last paragraph of § 11, which deals with posthearing matters.

In view of the strict time discipline which c. 40B imposes on local boards[4] and the legislative intent to effect an expedited procedure, it would be contrary to the statutory scheme

---

[3] The history of the consequences of inaction by a board of appeal in proceedings under G. L. c. 40A is discussed in *Noe* v. *Board of Appeals of Hingham,* 13 Mass. App. Ct. at 106-107.

[4] By contrast, the schedule established by G. L. c. 40B, § 22, for the Housing Appeals Committee is directory, and failure to adhere to the schedule does not result in a constructive grant or denial. *Board of Appeals of Melrose* v. *Housing Appeals Comm.,* 5 Mass. App. Ct. 838 (1977).

if the date from which to count for purposes of judicial review were other than the date on which approval was constructively granted. This imposes no great burden on town boards and officials or private interested parties who might wish to appeal from the issuance of a constructive permit. Except for the unusual case where the end of the hearing is in doubt[5] (this is the first such case since the Anti-snob Zoning Act came on the books in 1969), it is not difficult for interested parties to begin counting to sixty (i.e., forty days plus twenty days)[6] and to lodge an action for judicial review in time. All interested persons will have been notified, G. L. c. 40B, § 21, and G. L. c. 40A, §§ 11 and 15, and municipal officials will be well aware of the status of the proceedings. By comparison a considerable burden is placed on the applicant. The board that chooses not to decide on time may also choose — indeed, is likely to choose — not to issue any certificate evidencing a constructive grant, and the unhappy applicant may be compelled to go to court to obtain observance of the "expedited" procedure. He could wait, but the waiting period would be indeterminate. Precisely those "gaps and uncertainties" would develop which the court has said ought to be eschewed. *Selectmen of Pembroke* v. *R. & P. Realty Corp.*, 348 Mass. at 127. The language in G. L. c. 40B, § 21, is not dissimilar to the language in G. L. c. 41, § 81U (governing, among other things, approval, disapproval and constructive approval of a plan of a subdivision), as to which the court in *Pembroke* said (at 126): "[I]f there had been no decision, the right of appeal would expire on the eightieth day after submission of the plan . . . ." See also *Building Inspector of Attleboro* v. *Attleboro Land-*

---

[5] Even in cases where the starting point for purposes of the twenty-day appeal period is in doubt, it is open to persons wishing to appeal to err on the side of caution. Cf. *Noe* v. *Board of Appeals of Hingham*, 13 Mass. App. Ct. at 109-110.

[6] They would also do well to count to thirty days from the date an application is filed with a board since failure to convene a public hearing in that time may, as we have seen, result in a constructive permit under G. L. c. 40B, § 21.

*fill, Inc.,* 384 Mass. at 110-113. For these reasons we hold that appeal from a constructive grant of a comprehensive permit under G. L. c. 40B, § 21, must be filed within twenty days after the date on which the constructive permit is deemed to have been issued.

The judgment is to be modified to declare that a comprehensive permit issued on January 24, 1981, in accordance with MCA's application. Although not required, it would be desirable and appropriate for the board to issue to MCA a certificate evidencing the issuance of such a permit, or, at least, the facts which result in the issuance of such a permit. The last sentence of the judgment, dealing with judicial appeals, is deleted. As so modified, the judgment is affirmed.

*So ordered.*