# Planning Board of Hingham *vs.* Hingham Campus, LLC, & another.[1]

Suffolk. September 6, 2002. - January 6, 2003.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Zoning,* Board of appeals: jurisdiction, Comprehensive permit, Issuance of permit, Housing appeals committee, By-law, Appeal to board of appeals, Person aggrieved. *Practice, Civil,* Standing. *Housing. Statute,* Construction.

A Land Court judge properly allowed the motions of a town's board of appeals and a landowner to dismiss a complaint filed by the town's planning board, alleging that the board of appeals exceeded its authority under G. L. c. 40B and the zoning bylaw in granting a comprehensive permit to the landowner to construct a continuing care retirement community in the town, which the planning board alleged would not create affordable housing under G. L. c. 40B, where the planning board lacked standing to appeal from the grant of the comprehensive permit issued under G. L. c. 40B, § 21. [366-371]

Civil action commenced in the Land Court Department on October 9, 2001.

A motion to dismiss was heard by *Peter W. Kilborn*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Peter L. Puciloski* (*James B. McLindon* with him) for Planning Board of Hingham.

*Paul D. Wilson* (*Benjamin B. Tymann* with him) for Hingham Campus, LLC.

*James A. Toomey* (*Stacey G. Bloom* with him) for Board of Appeals of Hingham.

The following submitted briefs for amici curiae:

*David S. Weiss, David M. Abromowitz, & Karen J. Kepler* for Citizens' Housing and Planning Association & another.

*Michael P. Holden*, pro se.

---

[1]Board of Appeals of Hingham.

*George M. Ford*, pro se.

IRELAND, J. The plaintiff, the planning board of Hingham, filed a complaint against the defendants, Hingham Campus, LLC (Hingham Campus), and the town's board of appeals, alleging that the board of appeals exceeded its authority under G. L. c. 40B in granting a comprehensive permit. The defendants moved to dismiss the complaint under Mass. R. Civ. P. 12 (b) (1), 365 Mass. 754 (1974), for lack of subject matter jurisdiction. A judge in the Land Court granted the defendants' motions and the planning board appealed. We granted the parties' applications for direct appellate review. Because we conclude that the plaintiff lacks standing to bring this suit, we affirm the judgment of the Land Court.

I. *Facts.* We summarize the facts set forth in the complaint.[2] On November 6, 2000, Hingham Campus applied to the board of appeals for a comprehensive permit pursuant to G. L. c. 40B to construct a continuing care retirement community on 108.5 acres of land. After several months of public hearings the board of appeals voted unanimously to grant the comprehensive permit. The proposed project includes 1,750 rental apartments with amenities and services for the elderly, an extended care center consisting of 192 units with intensive assisted living services, and 324 beds in a skilled nursing facility. Under the proposal, the project's residents would be required to "pay a refundable entrance deposit, and on a monthly basis pay a combined rental and service fee." The project is proposed to be constructed pursuant to the New England Fund, which is an affordable housing financing program operated by the Federal Home Loan Bank of Boston through its member institutions.

The planning board alleges that the board of appeals exceeded its authority under G. L. c. 40B and the zoning bylaw. In particular, the plaintiff contends that the planned project does not comply with the zoning bylaw because it exceeds the maximum height requirement of two and one-half stories. The

---

[2]"In reviewing a dismissal under [Mass. R. Civ. P. 12 (b) (1) or (6), 365 Mass. 754 (1974)], we accept the factual allegations in the plaintiffs' complaint, as well as any favorable inferences reasonably drawn from them, as true." *Ginther* v. *Commissioner of Ins.*, 427 Mass. 319, 322 (1998), citing *Nader* v. *Citron*, 372 Mass. 96, 98 (1977).

planning board further alleges that the project is not eligible for a permit under G. L. c. 40B, which allows applicants to bypass existing zoning laws. It argues that it is impossible to characterize the development as affordable housing due to the large initial deposit that is required, and the estimated rental and service fees. In addition, the planning board contends that the Department of Housing and Community Development (department) has determined that the project does not qualify as low and moderate income housing. The plaintiff bases this assertion on a letter written by the department's acting director that expresses concerns about the affordability of the residence units.[3] The planning board also argues that the project fails to meet the requirements of G. L. c. 40B, because the developers had not finalized all the project's programmatic aspects. Thus, the planning board argues that the project cannot qualify as affordable housing under G. L. c. 40B, and cannot lawfully receive a comprehensive permit under that statute.

II. *Discussion.* The planning board asserts standing under G. L. c. 40A, § 17, to challenge the comprehensive permit issued to Hingham Campus. The planning board argues that the proposed project cannot meet the requirements of affordable housing, as set forth by the housing appeals committee,[4] and therefore the permit issued to Hingham Campus is not valid under G. L. c. 40B. Thus, the plaintiff contends that it is not bound by the standing requirements of G. L. c. 40B, § 21, but instead can take advantage of the more general standing provisions for appealing from decisions of a zoning board of appeals. We disagree with this reasoning.

Our analysis of standing must begin by examining G. L. c. 40B, §§ 20-23. Although the planning board does not agree with the determination of the board of appeals that the proposed

---

[3]The letter from the Department of Housing and Community Development (department), dated June 14, 2001, was appended to the complaint. However, the parties mention in their briefs two additional letters from the department that are not part of the record. Our decision would remain unchanged even if we were to consider them.

[4]The housing appeals committee "is a five-person board organized under G. L. c. 23B, § 5A, and is authorized to hear appeals from the denial of an application for a comprehensive permit." *Zoning Bd. of Appeals of Wellesley* v. *Ardemore Apartments Ltd. Partnership*, 436 Mass. 811, 813 n.7 (2002).

project qualifies as affordable housing, it does not contest the fact that Hingham Campus applied for a comprehensive permit under G. L. c. 40B, and that the board of appeals granted the permit under the provisions of that statute. In addition, the plaintiff also acknowledges that the project is to be funded by the New England Fund, which is an affordable housing financing program.[5] Given that the application was filed and the permit was granted pursuant to G. L. c. 40B, §§ 20-23, it is inappropriate to rely on a different statutory scheme to establish standing. As the Land Court aptly noted, "the General Court drew a clear line regarding who has standing under chapter 40B, particularly as contrasted with standing under G. L. c. 40A, § 17."

We find support for our conclusion in traditional rules of statutory interpretation. General Laws c. 40B, § 21, limits standing by its express terms to "[a]ny person aggrieved by the issuance of a comprehensive permit . . . ." By contrast, G. L. c. 40A, § 17, provides standing to "[a]ny person aggrieved by a decision of the [zoning] board of appeals . . . *or any municipal officer or board* . . ." (emphasis added). When a decision of a zoning board of appeals is rendered pursuant to the authority of G. L. c. 40B, we should not look to the more general statutory scheme of G. L. c. 40A, § 17, to determine standing. See, e.g., *Commonwealth* v. *Houston*, 430 Mass. 616, 625 (2000) (Marshall, C.J., concurring), quoting 2B Singer, Sutherland Statutory Construction § 51.02 (5th ed. 1992) ("to the extent a conflict between . . . two statutes exists, 'the more specific statute controls over the more general one' "). See also *Bagley* v. *Illyrian Gardens, Inc.*, 401 Mass. 822, 824 (1988) (Housing Court's jurisdiction to hear appeals from zoning board "must be construed in light of other statutes dealing more specifically with the permitting process"). In addition, we can presume that the Legislature did not intend to give municipal boards and officers standing to appeal from the grant of comprehensive permits, because, unlike G. L. c. 40A, § 17,

---

[5]General Laws c. 40B, § 20, defines " '[l]ow or moderate income housing' [as] any housing subsidized by the federal or state government under any program to assist the construction of low or moderate income housing as defined in the applicable federal or state statute, whether built or operated by any public agency or any nonprofit or limited dividend organization."

G. L. c. 40B does not expressly grant them standing. See, e.g., *id.* at 824-825 (grant of jurisdiction to particular division of Housing Court implicitly denies jurisdiction to other Housing Court divisions to hear appeals from zoning boards of appeals), and cases cited; *Milton Commons Assocs.* v. *Board of Appeals of Milton*, 14 Mass. App. Ct. 111, 118 (1982) (G. L. c. 40B, § 21, "does not incorporate . . . the filing requirement of G. L. c. 40A, § 15, which is conspicuously absent"). Thus, we conclude that it is improper to consider standing under G. L. c. 40A, § 17, where the board of appeals issued the contested permit under G. L. c. 40B, § 21.

We turn to whether the planning board has standing under G. L. c. 40B, § 21. We conclude that it does not have standing to contest the comprehensive permit and the violations of the zoning bylaws because it is not a "person aggrieved." For purposes of interpreting the term "person aggrieved" under the comprehensive permit statute, we look to interpretation of the identical term in G. L. c. 40A, § 17. See *Bell* v. *Zoning Bd. of Appeals of Gloucester*, 429 Mass. 551, 553 (1999) (for person claiming to be "person aggrieved," "the same standing requirements apply to appeals under G. L. c. 40A and G. L. c. 40B appeals"). Municipal boards and officers are not "person[s]" for purposes of standing. See *Commonwealth* v. *Dowd*, 37 Mass. App. Ct. 164, 166 (1994), and cases cited ("For purposes of construing the General Laws, the word 'person' ordinarily does not describe the State or its subdivisions"). See also *Planning Bd. of Marshfield* v. *Zoning Bd. of Appeals of Pembroke*, 427 Mass. 699, 701-702 (1998) (analyzing standing of planning board under the "municipal officer or board" provision of G. L. c. 40A, § 17, as opposed to using the "person aggrieved" standard). Thus, neither the planning board nor its members, are "person[s]" under the standing provision of G. L. c. 40B, § 21.

Similarly, the planning board is not "aggrieved." "A plaintiff is a 'person aggrieved' if he suffers some infringement of his legal rights." *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, 421 Mass. 719, 721 (1996), citing *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston*, 324 Mass. 427, 430 (1949). More specifically, the injury must be a "violation of a private right, a private property interest, or a private legal interest."

*Bell* v. *Zoning Bd. of Appeals of Gloucester, supra* at 554, quoting *Harvard Square Defense Fund, Inc.* v. *Planning Bd. of Cambridge,* 27 Mass. App. Ct. 491, 493 (1989). A person aggrieved must also present "evidence to 'establish . . . that his injury is special and different from the concerns of the rest of the community.' " *Bell* v. *Zoning Bd. of Appeals of Gloucester, supra,* quoting *Barvenik* v. *Aldermen of Newton,* 33 Mass. App. Ct. 129, 132 (1992). The planning board's alleged injury in this case is that the proposed development will not create affordable housing under G. L. c. 40B. As it acknowledges in its brief, however, such an injury is not "special and different from [that] of the rest of the community." *Nickerson* v. *Zoning Bd. of Appeals of Raynham,* 53 Mass. App. Ct. 680, 682 (2002), and cases cited. Thus, we conclude that the planning board is not a person aggrieved under G. L. c. 40B, § 21.

The planning board suggests several additional theories to support standing. We will address each argument in turn. We reject the planning board's argument that it is appropriate to consider Hingham Campus's comprehensive permit as a variance or special permit. Contrary to the plaintiff's assertions, there is no statutory support for treating a comprehensive permit that has been approved by a zoning board of appeals as something other than a comprehensive permit. This situation is not, as the planning board argues, analogous to the statutory provision that deems a permit approved if the zoning board exceeds certain time limits. See G. L. c. 40B, § 21; *Pheasant Ridge Assocs. Ltd. Partnership* v. *Burlington,* 399 Mass. 771, 782-784 (1987) (comprehensive permit constructively granted when zoning board of appeals failed to act within prescribed time period); *Milton Commons Assocs.* v. *Board of Appeals of Milton, supra* (interpreting mechanics of constructive grant provision).

We also reject the argument that the legislative intent of G. L. c. 40B, §§ 20-23, requires us to ignore the statutory scheme concerning standing. The Legislature enacted G. L. c. 40B "to provide relief from exclusionary zoning practices which prevented the construction of badly needed low and moderate income housing." *Zoning Bd. of Appeals of Wellesley* v. *Ardemore Apartments Ltd. Partnership,* 436 Mass. 811, 814 (2002),

quoting *Board of Appeals of Hanover* v. *Housing Appeals Comm.*, 363 Mass. 339, 354 (1973). In order to achieve this purpose, the statutory scheme creates a permitting process different from the usual practice. See, e.g., *Zoning Bd. of Appeals of Wellesley* v. *Ardemore Apartments Ltd. Partnership*, *supra* at 814-815. For example, the statute streamlines the process so that a developer need only file one application with one municipal board. The statute also limits the time within which a zoning board can hold public hearings and render its decision. See G. L. c. 40B, § 21. We can presume that the Legislature, "concerned with the cities' and towns' possible use of their zoning powers to exclude low and moderate income groups," intentionally limited the class of parties with standing to challenge a comprehensive permit. *Board of Appeals of Hanover* v. *Housing Appeals Comm.*, *supra* at 347. The Legislature would not likely condone manipulation of the comprehensive permitting process to thwart the construction of low and moderate income housing.[6] However, the statutory scheme does not provide a mechanism for a municipal board to appeal from the granting of a permit. "The question of standing is one of critical significance," *Tax Equity Alliance for Mass.* v. *Commissioner of Revenue*, 423 Mass. 708, 715 (1996), and we may not disregard the statute's limitations on standing.

The planning board asks us to find that municipal officers and boards have standing under G. L. c. 40A, § 17, in situations where "the relevant state agency has made a preliminary or definitive determination that the housing to be built is not affordable." We decline to do so for the following reasons.

First, as previously discussed, the statutory scheme for standing directs us to G. L. c. 40B, which does not grant standing to municipal boards. Second, G. L. c. 40B, § 21, vests a board of appeals, alone, with the power to determine whether to issue a comprehensive permit, and provides for housing appeals committee review of a board's decision at the behest of the applicant in only two scenarios: "[1] in the case of the denial of

---

[6]Because of our determination that the planning board lacks standing, we do not address the merits of any of its claimed defects in this particular project and express no opinion on whether there has been any such "manipulation" of the permitting process.

an application . . . [and 2] in the case of an approval of an application with conditions and requirements imposed." G. L. c. 40B, § 23. The statute does not require the applicant to obtain any form of agency approval as a prerequisite to approval of a comprehensive permit by the local board of appeals.[7]

Finally, we are not persuaded by the argument that, if the planning board does not have standing to challenge the comprehensive permit, then no one will have standing. Such "an unfounded assumption that, if the . . . plaintiff[] lack[s] standing, no one will have standing to sue, is not a reason to find standing where none exists." *Tax Equity Alliance for Mass.* v. *Commissioner of Revenue*, 423 Mass. 708, 716 (1996), citing *Valley Forge Christian College* v. *Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 489 (1982). "If the law is to be changed, the change can only be made by the Legislature." *Commonwealth* v. *Jones*, 417 Mass. 661, 664 (1994).

III. *Conclusion.* For the foregoing reasons we conclude that the planning board does not have standing to appeal from the grant of a comprehensive permit issued under G. L. c. 40B, § 21.

*Judgment affirmed.*

---

[7]The planning board's proposal for standing would also create many ambiguities such as: (1) what qualifies as "a preliminary determination" of an agency; (2) what procedure the agency should use to make such determinations; (3) when the agency should be asked to make such determinations; (4) what happens should the agency later reach a different conclusion; and (5) what deference we should give to an agency's preliminary determination. See *Commonwealth* v. *Kennedy*, 435 Mass. 527, 530 (2001), and cases cited ("Where the statutory language is clear, courts apply the plain and ordinary meaning of that language").